UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| (1) NUTREANCE LLC, a Connecticut Limited Liability Company,<br>(2) IDINGO, LLC, a Delaware Limited Liability Company, and<br>(3) KOECH CORP., a Florida Corporation,<br><br>    Plaintiffs,<br><br>  v.<br><br>(1)  PRIMARK, LLC, a Nevada Limited Liability Company,<br>(2)  ADMARK, LLC, a Nevada Limited Liability Company,<br>(3)  WASTENA HOLDINGS, LLC, a Nevada Limited Liability Company,<br>(4) iHEALTH FULFILLMENT SERVICES LIMITED LIABILITY COMPANY, a New Jersey Limited Liability Company,<br>(5) DANNY O'SHEA, an individual,<br>(6) EILEEN OLYMPIA CHAVEZ, a/k/a EILEEN OLYMPIA O'SHEA, an individual,<br>(7) BRENDON O'SHEA, an individual, and<br>(8) DOES 1 to 10, inclusive,<br><br>    Defendants. | Case No. _____<br><br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

COME NOW plaintiffs Nutreance LLC, Idingo, LLC, and Koech Corp., and for their causes of action, hereby state:

### The Parties

1. Plaintiff Nutreance LLC is a Connecticut limited liability company with its

principal place of business in Connecticut, and which does business in the state of Missouri.

2. Plaintiff Idingo, LLC is a Delaware limited liability company with its principal place of business in Florida, and which does business in the state of Missouri.

3. Plaintiff Koech Corp. is a Florida corporation with its principal place of business in Florida, and which does business in the state of Missouri.

4. Upon information and belief, defendant Primark, LLC is a Nevada limited liability company with its principal place of business in Nevada, and which does business in the state of Missouri.

5. Upon information and belief, defendant Admark, LLC, is a Nevada limited liability company with its principal place of business in Nevada, and which does business in the state of Missouri.

6. Upon information and belief, defendant Wastena Holdings, LLC, is a Nevada limited liability company with its principal place of business in Nevada, and which does business in the state of Missouri.

7. Upon information and belief, defendant iHealth Fulfillment Services Limited Liability Company, is a New Jersey limited liability company with its principal place of business in New Jersey, and which does business in the state of Missouri.

8. Upon information and belief, defendant Danny O'Shea is an individual residing in New Jersey with the same residential address as the principal place of business of iHealth Fulfillment Services Limited Liability Company, and is a manager and owner of defendants Primark, LLC, Admark, LLC, Wastena Holdings, LLC, and IHealth Fulfillment Services Limited Liability Company.

9. Upon information and belief, defendant Eileen Olympia Chavez, a/k/a Eileen Olympia O'Shea is an individual married to defendant Danny O'Shea, residing in New Jersey with the same residential address as the principal place of business of iHealth Fulfillment Services Limited Liability Company, and is a participant in the wrongdoing alleged herein.

10. Upon information and belief, defendant Brendon O'Shea is an individual residing in New Jersey, and is a manager and owner of defendants Primark, LLC, Admark, LLC, Wastena Holdings, LLC, and IHealth Fulfillment Services Limited Liability Company.

11. Plaintiffs are currently unaware of the identities of defendants DOES 1 to 10, and therefore sues defendants by such pseudonyms.  Upon information and belief, discovery will reveal the true identities of those defendants, and plaintiffs will then amend this Complaint to identify those defendants by name.  Upon information and belief, defendants DOES 1 to 10 are individuals or entities affiliated with defendants, or have control and responsibility for the marketing, advertising, promotion and sale of defendants' products.

12. Upon information and belief, there now exists, and at all relevant times herein there existed, a unity of interest and ownership between and among defendants, such that any individuality and separateness between and among them has ceased to exist, and defendants, and each of them, are the alter egos of each other.   Upon information and belief, at all material times herein, each defendant was the agent, employee, partner or representative of every other defendant, and each has the authority to bind the others in transactions with third parties. Upon information and belief, each defendant named herein committed acts and omissions leading to plaintiffs' damages, were acting in concert and

active participation with each other in committing the wrongful acts alleged herein, and *continue to do so*, and in so doing acted and continue to act within the scope and course of their agency with every other named defendant and each of them authorized, directed, accepted, ratified and approved of such actions.

## Jurisdiction and Venue

13. This is an action for violations of the Lanham Act, as well as various acts of unfair competition, commercial disparagement, defamation, and tortious interference with business relationships/expectancies. This Court has subject matter (federal question) jurisdiction over plaintiffs' claims for Lanham Act violations pursuant to 15 U.S.C.§1121 and 28 U.S.C.§§ 1331and 1338.

14. This Court has supplemental jurisdiction over plaintiffs' claims arising under the laws of the state of Missouri pursuant to 28 U.S.C.§1367(a) because these claims are so related to plaintiffs' claims under federal law that they form a part of the same case or controversy and derive from a common nucleus of operative facts.

15. This Court has personal jurisdiction over each of the defendants because each defendant has had continuous, systematic, and substantial contacts with the state of Missouri, including doing business in Missouri and expressly aiming their infringing and unlawful conduct at Missouri consumers. Further the unlawful acts described in this Complaint were committed by defendants in this District, and have caused harm in this District, and defendants, or their agents operating within the scope and course of their agency with defendants, operate the offending websites which are viewable by citizens of this District.

16. Venue is proper in this judicial district pursuant to 28 U.S.C.§1391, in that,

among other things, a substantial portion of the events giving rise to this action – including but not limited defendants selling their products and publishing advertising materials — occurred within this District.

## General Allegations

17. Plaintiff Nutreance LLC is the owner of the valid and subsisting common-law trademarks RediCalm, RediMove, and RediNite; and has actively used these marks in commerce throughout the United States in connection with these dietary supplements which are used in the promotion of mental and physical health; and as a result of its extensive promotional activities, and its investment of substantial time, money, and effort, plaintiff Nutreance LLC has created substantial goodwill in these marks and consumers associate these marks with the high quality supplement products which originate from plaintiff Nutreance LLC; and plaintiff Nutreance LLC markets and sells RediCalm, RediMove, and RediNite products almost exclusively on the internet and as such, plaintiff has a compelling need to maintain an online presence that allows it to effectively disseminate accurate and truthful information about its products to consumers.

18. Plaintiff Idingo, LLC is the owner of the valid and subsisting common-law trademarks Proaxil, MenoPrin, Jointprin, and Brainol; and has actively used these marks in commerce throughout the United States in connection with these dietary supplements which are used in the promotion of mental and physical health; and as a result of its extensive promotional activities, and its investment of substantial time, money, and effort, plaintiff Idingo, LLC has created substantial goodwill in these marks and consumers associate these marks with the high quality supplement products which originate from plaintiff Idingo, LLC ; and plaintiff Idingo, LLC markets and sells Proaxil, MenoPrin,

Jointprin, and Brainol products almost exclusively on the internet and as such, plaintiff has a compelling need to maintain an online presence that allows it to effectively disseminate accurate and truthful information about its products to consumers.

19. Plaintiff Koech Corp., through its employee-for-hire, is the owner of the valid and subsisting trademark MACAFEM which is registered with the United State Patent and Trademark Office under Registration 4376119 [*see* MACAFEM Registration, incorporated by reference herein, attached hereto, and labeled "Plaintiffs' Exhibit 1"]; and has actively used this mark in commerce throughout the United States in connection with this dietary supplement which is used in the promotion of mental and physical health; and as a result of its extensive promotional activities, and its investment of substantial time, money, and effort, plaintiff Koech Corp. has created substantial goodwill in these marks and consumers associate this mark with the high quality supplement products which originate from plaintiff Koech Corp.; and plaintiff Koech Corp. markets and sells MACAFEM products almost exclusively on the internet and as such, plaintiff has a compelling need to maintain an online presence that allows it to effectively disseminate accurate and truthful information about its products to consumers.

20. Upon information and belief, defendants own and operate certain websites and/or blogs (the "Websites")., which are set forth and incorporated by reference herein, attached hereto, and labeled "Plaintiffs' Exhibit 2."

21. The Websites purport to give unbiased "reviews" of products in various categories providing a sham and manipulated ranking system. In every list on the Websites, defendants' products are rated "#1" or "top choice," or words to that effect, while competing products all receive lesser ranking and sub-standard reviews.

22. The Websites intentionally do not disclose that there is any connection between defendants and the Websites; and to the contrary, intentionally create the clear and false impression that the Websites are operated and published independently by unbiased third parties and without association to or with defendants, including but not limited to including "consumerhealthdigest" (for example), or other such misleading names, when, in reality, the Websites are actually sponsored, owned, and controlled by defendants.

23. Defendants publish and utilize blog(s), also intentionally purporting to provide more "unbiased," but sham and manipulated reviews of plaintiffs' products, by displaying pictures of plaintiffs' products alongside text that state "Learn More." Upon clicking this link, consumers are taken directly to a "buy" page for defendants' products instead of "learning more" about plaintiffs' products as indicated.

24. Upon information and belief, defendants have purchased, and continue to do so, plaintiffs' marks as a paid AdWord through search engines such as Google, so that consumers searching for plaintiffs' products are directed to the Websites.

25. The advertisements that defendants publish when a consumer searches for plaintiffs' products use plaintiffs' marks, and direct consumers to the Websites; and such advertisements intentionally contain false, misleading and disparaging comments about plaintiffs' products [*see,* for example only, Google Advertisements, incorporated by reference herein, attached hereto, and labeled "Plaintiffs' Exhibits 3-6"].

26. Defendants use plaintiffs' marks in HTML mega-tags, keywords and in other online marketing efforts to intentionally direct consumers looking for plaintiffs' products to the Websites for the purposes of further disparaging plaintiffs' products and marketing

defendants' competing supplements.

27. Defendants created the secretly sponsored websites with biased and sham reviews, ratings, and rankings with malice and the intent to harm plaintiffs and the sales of their products, while unlawfully and wrongfully attempting to endorse and sell defendants' infringing products for defendants' commercial gain, at plaintiffs' expense.

28. On December 31, 2016, counsel for plaintiff Nutreance sent defendants Danny O'Shea, Brendan O'Shea, and iHealth Fullfillment a letter by certified mail demanding that they cease and desist from their wrongful and infringing conduct; yet, defendants did not cease and desist from their unlawful conduct, but continue such conduct to this day.

29. Upon information and belief, DOES 1-10 are individuals or entities affiliated with defendants, have control and responsibility for marketing, promotion and sale of defendants' products and defendants' adoption and use of plaintiffs' marks, and personally and directly benefit from the activities complained of herein.

30. The Websites and their infringing products have decreased plaintiffs' sales of their products and have lowered plaintiffs' conversions, as a result of consumer confusion caused by defendants' conduct; and such decreased sales and lowered conversions are the natural and probable consequence of defendants' unlawful conduct described herein.

31. Defendants' actions have also caused, and will further cause, plaintiffs irreparable harm to their names and reputations for which money damages and legal remedies are inadequate.  Unless defendants are restrained and enjoined by this Court, defendants will *continue* and/or expand their unlawful activities alleged hereinabove and

otherwise *continue* to cause great and irreparable damage and injury to plaintiffs by, among other things:

    a.    Depriving plaintiffs of their statutory and common-law rights to use and control the usage of its marks without disparagement and defamatory comments being made by defendants;

    b.    Creating a likelihood of confusion, mistake and deception among consumers and the trade as to the source of plaintiffs' goods and defendants' goods;

    c.    Causing the public to falsely associate plaintiffs' products with defendants' products, or vice versa.

    d.    Causing the public to purchase the infringing products instead of plaintiffs' products based on defendants' sham, manipulated and biased reviews, ranking, and rating systems;

    e.    Causing incalculable and irreparable damages to plaintiffs goodwill and diluting the capacity of its marks to differentiate plaintiffs' goods from the goods of others; and

    f.    Causing plaintiffs to lose sales.

<u>COUNT I – Trademark Infringement</u>

32.    Plaintiffs hereby incorporate by reference the allegations in paragraphs 1 - 31 as if fully set forth herein.

33.    Plaintiffs' marks — RediCalm, RediMove, and RediNite, Proaxil, MenoPrin, Jointprin, and Brainol, and MACAFEM — are valid, protectable, well-known trademarks.

34.    Plaintiffs' rights in their marks pre-date any use of the marks by defendants.

35. Plaintiffs, or their employees-for-hire, own all rights, title, interest and goodwill associated with their marks.

36. At all times complained of herein, defendants were aware of plaintiff's rights in their marks.

37. Defendants have used plaintiffs' marks in commerce without plaintiffs' knowledge or consent.

38. Defendants have used plaintiffs' marks in a manner calculated to capture initial consumer attention and to direct such attention to the Websites, in the promotion of defendants' competing products.

39. Defendants' use of plaintiffs' marks have been willful, deliberate, intended to benefit defendants at plaintiffs' expense, and made in bad faith.

40. Defendants' use of plaintiffs' marks is likely to cause confusion in violation of of the Lanham Act, including but not limited to 15 U.S.C.§1114.

41. As a direct and proximate result of defendants' conduct, plaintiffs have suffered damages, including but not limited to the loss of goodwill and lost profits.

42. As a direct and proximate result of defendants' *continuing* conduct, damages constitute an inadequate legal remedy to prevent irreparable harm to plaintiffs; and plaintiffs are thereby entitled to injunctive relief to prevent such *continuing* conduct.

44. This is an exceptional case under 15 U.S.C.§1117(a) and plaintiffs are entitled to an award of attorneys' fees.

## COUNT II – False Advertising

44. Plaintiffs hereby incorporate by reference the allegations in paragraphs 1 - 43 as if fully set forth herein.

45. Defendants have made numerous false and misleading statements in the commercial advertising and promotion of the Websites and their products.

46. Defendants have caused their false and misleading statements to enter interstate commerce.

47. Defendants' statements have a tendency to deceive, and upon information and belief, have in fact deceived a substantial segment of its audience, including but not limited to plaintiffs' customers and prospective customers.

48. The deception caused by defendants' false statements is material in that it is likely to influence purchasing decisions.

49. Defendants' conduct has been willful, wanton and reckless.

50. Plaintiffs have been injured and damaged as a result of defendants' statements, including but not limited to the loss of goodwill and lost profits.

51. As a direct and proximate result of defendants' *continuing* conduct, damages constitute an inadequate legal remedy to prevent irreparable harm to plaintiffs; and plaintiffs are thereby entitled to injunctive relief to prevent such *continuing* conduct.

52. Defendants' conduct is a violation of 15 U.S.C.§1125(a)(1)(B); and this is an exceptional case under 15 U.S.C.§1117(a) and plaintiffs are entitled to an award of attorneys' fees.

### COUNT III – Federal Unfair Competition

53. Plaintiffs hereby incorporate by reference the allegations in paragraphs 1 - 52 as if fully set forth herein.

54. Defendants' actions constitute unfair competition in violation of the Lanham Act, 15 U.S.C.§1125(a).

55. As a direct and proximate cause of defendants' conduct, plaintiffs have been damaged in amounts to be proven at trial, including but not limited to the loss of goodwill and lost profits.

56. At all material times, defendants have acted in bad faith, oppressively, and maliciously towards plaintiffs, with intent to injure plaintiffs, thereby entitling plaintiffs to treble damages against defendants in a further amount to be determined at trial.

57. As a direct and proximate result of defendants' *continuing* conduct, damages constitute an inadequate legal remedy to prevent irreparable harm to plaintiffs; and plaintiffs are thereby entitled to injunctive relief to prevent such *continuing* conduct.

58. This is an exceptional case under 15 U.S.C.§1117(a) and plaintiffs are entitled to an award of attorneys' fees.

## COUNT IV – Common Law Unfair Competition

59. Plaintiffs hereby incorporate by reference the allegations in paragraphs 1 - 58 as if fully set forth herein.

60. Defendants' actions, including but not limited to their use of the names of plaintiffs' products and marks associated therewith, constitute unfair competition under the applicable common law of the states in which the parties operate, including but not limited to the state of Missouri.

61. Defendants have intentionally and knowingly engaged in the unlawful use of plaintiffs' trademarks, names and good will.  Without limitation, defendants' actions have caused, and in the future are likely to cause, confusion, mistake, and deception among consumers and the public as to the quality of plaintiff's products, thereby causing loss, damage, and injury to plaintiffs and to the public.

62. As a direct and proximate result of defendants' unfair competition, defendants have unjustly enriched themselves, and have received revenues and profits in an amount that plaintiffs will prove at trial. Accordingly, plaintiffs are entitled to restitution, and an accounting and disgorgement of any profits of defendants.

63. As a direct and proximate result of defendants' unfair competition, plaintiffs have suffered and continue to suffer damages in such amounts that plaintiffs will prove at trial, including but not limited to the loss of goodwill and lost profits.

64. As a direct and proximate result of defendants' *continuing* conduct, damages constitute an inadequate legal remedy to prevent irreparable harm to plaintiffs; and plaintiffs are thereby entitled to injunctive relief to prevent such *continuing* conduct.

## COUNT V – Commercial Disparagement

65. Plaintiffs hereby incorporate by reference the allegations in paragraphs 1 - 64 as if fully set forth herein.

66. Defendants have made statements about plaintiffs' products which are false or misleading, and are made to influence consumers.

67. Defendants have exhibited a pattern or practice of using keyword triggering advertising to disparage and unfairly compete with competitors in several markets, including plaintiffs'.

68. Defendants' statements were made in commerce and have caused injury to plaintiffs' reputations.

## COUNT VI – Defamation *Per se*

69. Plaintiffs hereby incorporate by reference the allegations in paragraphs 1 - 68 as if fully set forth herein.

70. Defendants have made false representations concerning plaintiffs' products on the Websites and in their advertising, and the consumers viewing such false representations correctly, or mistakenly but reasonably, understood that such statements were intended to refer to plaintiffs.

71. Defendants were at fault in making such statements.

72. Such statements tended to expose plaintiffs to contempt or ridicule or deprive plaintiffs of the benefit of public confidence.

73. Such statements were read by the public viewers of the Websites.

74. Plaintiffs' reputations were thereby damaged.

COUNT VII – Tortious Interference with Business Relationships/Expectancies

75. Plaintiffs hereby incorporate by reference the allegations in paragraphs 1 - 74 as if fully set forth herein.

76. Multiple business relationships, and/or reasonable expectations of entering into valid business relationships, existed between plaintiffs and their customers and prospective customers, which was breached or terminated by such customers and/or prospective customers.

77. Defendants caused such customers and prospective customers of plaintiffs to breach or terminate their relationships and/or expectancies with plaintiffs, and *continue* to cause the same.

78. Defendants did so intentionally and without justification or excuse and used unlawful means to do, as alleged above with particularity.

79. Plaintiffs were thereby damaged and injured.

80. As a direct and proximate result of defendants' *continuing* conduct, damages

constitute an inadequate legal remedy to prevent irreparable harm to plaintiffs; and plaintiffs are thereby entitled to injunctive relief to prevent such *continuing* conduct.

Prayer for Relief

WHEREFORE, plaintiffs pray that this Court enter judgment against defendants as follows:

1. For a judgment finding that:

    a. Defendants have infringed plaintiffs' trademarks in violation of 15 U.S.C.§1125(a);

    b. Defendants have violated Section 43 of the Lanham Act, 15 U.S.C.§1125(a) as it relates to false advertising;

    c. Defendants have unfairly competed with plaintiffs in violation of the Lanham Act, 15 U.S.C.§1125(a) *and* in violation of applicable state common law, including that of the state of Missouri;

    d. Defendants intentionally commercially disparaged and defamed plaintiffs, causing great damage to their reputations;

    e. Defendants have tortiously interfered with plaintiffs' business relationships and expectancies;

    f. In all instances, defendants have acted in bad faith, willfully, intentionally, and/or in malicious disregard of plaintiffs' lawfully protected rights.

2. That plaintiffs be awarded compensatory damages and lost profits, and/or restitution and disgorgement of profits made by defendants, in amounts to be determined at trial.

3. That plaintiffs be awarded punitive and/or exemplary damages in amounts to be determined at trial.

4. That plaintiffs be awarded their reasonable attorney's fees and costs.

5. That plaintiffs be awarded treble damages.

6. That the Court enter judgment in favor of plaintiffs granting equitable and injunctive relief over the activities complained of herein.

7. That the Court award pre-judgment and post-judgment interest to plaintiffs.

8. Such other and further relief as this Court deems just and proper.

<u>Demand for Jury Trial</u>

Plaintiffs demand a trial by jury on all claims and issues so triable.

UTHOFF, GRAEBER, BOBINETTE & BLANKE

By:    /s/     Richard B. Blanke
Richard B. Blanke, #28675MO
Paul L. Schmitz,  #66885MO
906 Olive Street, Ste. 300
St. Louis , MO   63101
Phone:  (314) 621-9550
Facsimile:  (314) 621-2697
E-Mail: rblanke@ugbblaw.com
E-Mail: pschmitz@ugbblaw.com
*Attorneys for Plaintiffs*